IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TOMIKO MARCUS,

   Plaintiff,

  v.

CAROLYN W. COLVIN,
Acting Commissioner of Social
Security,

   Defendant.

Case No. 6:13-cv-1009-AA
OPINION AND ORDER

---

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, Oregon 97293
  Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201

Gerald J. Hill
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington, 98104-7075
  Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff, Tomiko Ernest Marcus ("Plaintiff") brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

On April 9, 2007, Plaintiff filed an application for SSI. Tr. 25-28, 64-76. After the application was denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge. Tr. 46-47. On March 13, 2009, Administrative Law Judge Marilyn Mauer ("the ALJ") issued a decision finding Plaintiff was a U.S. Citizen for purposes of receiving SSI, and granted her benefits. Tr. 95-101. Upon referral from the Seattle Regional Commissioner, and under the authority of 20 C.F.R. §§ 416.1469 and 519.1470, the Appeals Council reviewed the decision on its own motion. Tr. 91-92, 103-107. On May 12, 2009, the Appeals Council remanded the decision to the ALJ for further development of the record. Tr. 154-156. On April 19, 2011, the ALJ issued a decision finding Plaintiff was not a United States citizen for the purposes of receiving benefits. Tr. 14-21. After the Appeals Council declined review, Plaintiff filed a complaint in this Court. Tr. 3-5,

Page 2 - OPINION AND ORDER

8-10.

## FACTUAL BACKGROUND

In 1940, Plaintiff was born on Moen Island, Truk District, now part of the Federated States of Micronesia ("FSM"). Tr. 129. In 1970, Plaintiff moved to the island of Saipan, now part of the Commonwealth of the Northern Mariana Islands ("CNMI"). Tr. 70. Plaintiff lived in Saipan until 1979, when she and her family moved to Oregon. Tr. 129.

Following World War II, the area now known as Micronesia, which included the FSM and the CNMI, became part of a United Nations Trusteeship, the Trust Territory of the Pacific Islands ("TTPI"), which was administered by the United States.

In 1972, the CNMI began negotiations with the United States in an effort to withdraw from the TTPI and become a commonwealth territory of the United States. The new CNMI government took office on January 9, 1978, and the CNMI officially became a commonwealth November 4, 1986. Upon the termination of the trusteeship, certain CNMI residents became U.S. citizens.

The CNMI passed a series of laws to facilitate a smooth transition from TTPI territory to U.S. Commonwealth. Relevant here are three laws determining who would become a citizen of the CNMI, and ultimately who would be granted full U.S. citizenship upon the termination of the trusteeship agreement.

**1. Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America**

In 1975, the people of the CNMI approved the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("the Covenant"). The Covenant defined the CNMI's relationship with the United States. Pub L. 94-241 90 Stat. 263 (1976) (codified at 48 U.S.C. §1801 note). Article 3 of the Covenant addressed issues of nationality and citizenship, and provided that certain persons who met its requirements would become full U.S. citizens upon termination of the trusteeship. Id. Specifically, § 301 provides that the following persons, provided they owed no allegiance to any foreign country, became U.S. citizens on November 4, 1986, by operation of law:

> (a) all persons born in the Northern Mariana Islands who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, and who on that date are domiciled in the Northern Mariana Islands or in the United States or any territory or possession thereof;
> (b) all persons who are citizens of the Trust Territory of the Pacific Islands on the day preceding the effective date of this Section, who have been domiciled continuously in the Northern Mariana Islands for at least five years immediately prior to that date, and who, unless under age, registered to vote in elections for the Marianas Islands District Legislature or for any municipal election in the Northern Mariana Islands prior to January 1, 1975; and
> (c) all persons domiciled in the Northern Mariana Islands on the day preceding the effective date of this Section, who, although not citizens of the Trust Territory of the Pacific Islands, on that date have been domiciled continuously in the Northern Mariana Islands beginning

prior to January 1, 1974.

Id. at § 301.

Section 304 of the Covenant, effective 1978, provided that those residents of the CNMI who met the requirements in § 301 of the Covenant would be entitled to "interim citizenship" before the end of the Trusteeship. Id. at § 304. Interim citizenship granted all the privileges and immunities held by U.S. citizens to citizens of the CNMI during the interim ratification period. Id. When the U.S. Congress approved the Covenant, it used the same language as Article 3 of the Covenant and provided that its provisions, including the grant of permanent U.S. citizenship, would become effective upon termination of the trusteeship, which occurred November 4, 1986. Pres. Proc. No. 5,564, 51 Fed. Reg. 40,399 (Nov. 3, 1986) reprinted in 48 U.S.C. § 1801.

### 2. The Constitution of the CNMI

The Covenant provided that the CNMI adopt a constitution consistent with both the Covenant and U.S. laws. See e.g. De Mesa v. Castro, 844 F.2d 642, 644 (9th Cir. 1988). Section 8 of the CNMI Constitution contained a Schedule of Transitional Matters which included an "Interim Definition of Citizenship" identical to Article 3 of the Covenant:

> For the period from the approval of the Constitution by the people of the [CNMI] to the termination of the Trusteeship Agreement, the term United States citizen or United States national as used in the Constitution includes those persons, who, on the date of the approval of the Constitution by the people of the [CNMI], do not

Page 5 - OPINION AND ORDER

> owe allegiance to any foreign state and who qualify under one of the following criteria:
> (a) Persons who were born in the [CNMI], who are citizens of the [TTPI] on the date of the approval of the Constitution by the people of the [CNMI], and who on that date are domiciled in the [CNMI] or in the United States or any territory or possession thereof;
> (b) Persons who are citizens of the [TTPI] on the date of the approval of the Constitution by the people of the [CNMI], who have been domiciled continuously in the [CNMI] for at least five years immediately prior to that date, and who, unless under age, registered to vote in the elections for the Mariana Islands District Legislature or for any municipal elections in the [CNMI] prior to January 1, 1975; or
> (c) Persons domiciled in the [CNMI] on the date of the approval of the Constitution by the people of the [CNMI] who, although not citizens of the [TTPI], on that date have been domiciled continuously in the [CNMI] beginning prior to January 1, 1974.

Tr. 180. This "Interim Definition of Citizenship" implemented the above-discussed requirements from § 301 of the Covenant. See De Mesa, 844 F.2d at 642.

### 3. Certificate of Identity Act

In 1978, the CNMI Legislature enacted the Certificate of Identity Act ("the Act") in order to expedite the requirements proscribed by § 301 of the Covenant and § 8 of the CNMI Constitution. 1978 N. Mar. I. Pub. L. 01-06; Pangilinan v. Castro, 688 F.2d 610, 611 (9th Cir. 1982).

The Act created a procedure for the issuance of Certificates of Identity to persons who would be granted interim citizenship, and ultimately full U.S. Citizenship, under both the Covenant and the CNMI Constitution. 1978 N. Mar. I. Pub. L. 01-06. Section 3 of the Act defined who was entitled to a Certificate of Identity, and was

substantially identical to § 3 of the Covenant. Id.; De Mesa, 844 F.2d at 645. Specifically, § 3 provided that Certificates of Identity, and therefore interim U.S. citizenship, could be granted to those:

> Persons who were born in the [CNMI], who are citizens of the [TTPI] on the date of the approval of the Constitution by the people of the [CNMI], and who on that date are domiciled in the [CNMI] or in the United States or any territory or possession thereof;
> (a) persons who are citizens of the [TTPI] on the date of the approval of the Constitution by the people of the [CNMI], who have been domiciled continuously in the [CNMI] for at least five years immediately prior to that date, and who, unless under age, registered to vote in elections for the Marina Islands District Legislature or for any municipal election prior to January 1, 1975; or
> (b) persons domiciled in the [CNMI] on the date of the approval of the Constitution by the people of the [CNMI] who, although not citizens of the Trust [TTPI], on that date have been domiciled continuously in the [CNMI] beginning prior to January 1, 1974.

N. Mar. I. Pub. L. 01-06. During the transition before the Commonwealth had fully come into existence, holders of Certificates of Identity were considered citizens of the CNMI and interim citizens of the United States. Smith v. Pangilinan, 651 F.2d 1320, 1323 (9th Cir. 1981).

### STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

## THE ALJ's FINDINGS

On March 13, 2009, the ALJ issued a decision finding Plaintiff a U.S. Citizen for purposes of receiving SSI, and granted her benefits. Tr. 95-101. The Appeals Council reviewed the decision on its own motion, and remanded the decision to the ALJ for further development of the record. Tr. 91-92, 103-107, 154-156. On remand, the ALJ found that Plaintiff failed to prove her U.S. citizenship under the criteria of the NMI Certificate of Identity act or under the criteria of Article III, § 301 of the CNMI constitution. Tr. 19-21. Therefore, the ALJ found that Plaintiff did not meet the citizenship requirements under the Social Security Administration regulations for the receipt of SSI benefits. Tr. 19. Plaintiff challenges these findings.

## DISCUSSION

Plaintiff argues that because she held a certificate of identity, she became a citizen by operation of law on November 4, 1986, pursuant to § 304 of the Covenant. Pl.'s Opening Br. 9; Proc. No. 5564, 51 Fed. Reg. at § 2. Plaintiff also argues that the record contains substantial evidence showing she fulfilled the requirements of § 301 of the Covenant. Pl.'s Opening Br. 12.

### 1. Scope of Citizenship Determination

As a preliminary matter, the ALJ correctly noted that when the Commissioner makes a finding regarding a claimant's citizenship, that finding is narrowly limited for the purpose of determining a claimant's eligibility for SSI benefits. Tr. 19. Only the Attorney General or the State Department may naturalize non-citizens. 8 U.S.C. § 1421(a); 22 U.S.C. § 2705(1). The ALJ's analysis and subsequent findings regarding Plaintiff's citizenship are limited to determining her eligibility for benefits. My findings, therefore, are similarly limited and shall not be construed as a grant of citizenship.

### 2. Citizenship under Certificate of Identity Act

Plaintiff argues that her possession of a Certificate of Identity pursuant to the Act makes her a citizen by operation of law. Pl.'s Opening Br. 9. As discussed above, whether Plaintiff is a U.S. citizen by operation of law is beyond the scope of this court. However, I find that Plaintiff is a citizen for the purposes

of SSI benefits because Plaintiff satisfies the domicile requirements of § 301(b) of the Covenant.

Plaintiff applied for a Certificate of Identity in March 1984, and received that Certificate in October 1984. Tr.129-132, 133-134. Plaintiff argues that because she was granted interim citizenship by way of her Certificate of Identity, she became a full U.S. citizen upon the termination of the trusteeship on November 4, 1986. Pl.'s Opening Br. 9.

However, the requirements for "a certificate of identity...are not coextensive with those for permanent citizenship." De Mesa, 844 F.2d at 646. Plaintiff's Certificate of Identity only granted her interim U.S. citizenship. In order for her to have full citizenship at the end of the trusteeship agreement, Plaintiff would need to satisfy § 301(b) of the Covenant, which requires that interim citizens be domiciled in the CNMI "for at least five years immediately prior to [November 3, 1986]," the day preceding the effective date of § 301 of the Covenant. Proc. No. 5564, 51 Fed. Reg. 40,399 at § 2. As discussed below, Plaintiff meets the domicile requirements of § 301(b). Tr.19-20. Therefore, for the sole purpose of determining eligibility for Benefits, I find that Plaintiff is a citizen under the Certificate of Identity Act.

### 3. Citizenship under § 301 of the Covenant

Plaintiff argues that the ALJ erred in finding that she did not meet the domicile requirement of § 301 of the Covenant and that

Page 10 - OPINION AND ORDER

instead the ALJ should have applied the domicile criteria of § 8 in the Schedule of Transitional Matters ("§ 8"). Pl.'s Opening Br. 12-15. Plaintiff alleges that because she meets the domicile criteria in § 8 of the Schedule of Transitional Matters in the CNMI Constitution, she is a U.S. citizen by operation of law. Id. at 12-13.

I find that § 301 of the Covenant, not § 8, is applicable to this case. Whether Plaintiff meets requirements of § 8 of the Schedule of Transitional matters is irrelevant, as § 8 defines only interim citizenship for the period between the ratification of the constitution and the end of the trusteeship agreement. Tr. 180. In order to be considered a U.S. citizen after the termination of the trusteeship agreement, Plaintiff must prove that she meets the domicile requirements of § 301 of the Covenant, which became effective on the day the trusteeship terminated. Proc. No. 5564, 51 Fed. Reg. 40,933 at § 2.

### A. Domicile Requirement of § 301 of the Covenant

The Covenant defines domicile as "that place where a person maintains a residence with the intention of continuing such residence for an unlimited or indefinite period, and to which such person has the intention of returning whenever he is absent, even for an extended period." § 1005, 90 Stat. 263. The ALJ found that the evidence was insufficient to satisfy the domicile requirements of § 301 of the Covenant. Tr. 19-20.

Page 11 - OPINION AND ORDER

Central to the ALJ's analysis was "the matter of whether or not [Plaintiff] was in fact domiciled in the Northern Mariana Islands from January 1, 1970 through November 4, 1986, as she alleged." Tr. 20. Specifically, the ALJ found that "an affidavit from [Plaintiff] swearing her intent to return to the [CNMI] at all times between 1979 and 1986 to be less than convincing." Tr. 20, 125-126.

I disagree and find that the ALJ's analysis of § 301 was based on an overly narrow reading of both § 301 and the domicile requirement of § 1005.

Despite the intent to expedite the process of granting U.S. Citizenship, § 301 of the Covenant still proved difficult to administer. 6 Immigration Law Service 2d PSD Foreign Affairs Manual 1126. Several court decisions shaped the interpretation and application of the Covenant, including the continuous domicile requirement of § 301. Id.; See e.g. Dela Cruz v. United States (D. N. Mar. I. July 31, 1987) (defining "all persons" as used in Section 301 as any person and his or her child or children). In Barasi v. United States, the court held the continuous domicile requirement of § 301(c) could be determined by applying the following guidelines:

> (a) The totality of the applicant's conduct will be used to determine domicile;
> (b) The substantially continuous presence of the applicant in the NMI since before 1974 will be viewed as affirmative evidence of his or her intent to remain in the NMI indefinitely and accorded great weight; and
> (c) Any official statement to the contrary about his or

Page 12 - OPINION AND ORDER

> her residence made by the applicant will not by itself serve to negate his or her true intent.

Barasi v. United States, No. 88-004, decl. judg. at *2 (D. N. Mar. I. Aug. 3, 1988); 6 Immigration Law Service 2d PSD Foreign Affairs Manual 1126. The use of "substantially continuous presence of an individual since prior to 1974" as a determination of intent echoes the requirements of § 301(c). Id.; § 301(c), 90 Stat. 263.

Since Plaintiff was a citizen of the TTPI at the end of the trusteeship agreement, § 301(b), not § 301(c), is the proper test to determine whether she meets the domicile requirement. Although Barasi examined the requirements of § 301(c), I find the reasoning persuasive when reviewing § 301(b). Central to the above guidelines is the interpretation of the Covenant's definition of "domicile" in § 1005, including relying on the totality of an applicant's conduct to determine domicile. Barasi's interpretation of "domicile" extends to an analysis of § 301(b), which also relies on § 1005.

To determine Plaintiff's intent, Barasi's guideline regarding substantially continuous presence, based on § 301(c), can be adapted to consider the voter registration requirements of § 301(b). Registering to vote in CNMI elections prior to January 1, 1975 "will be viewed as one of the most affirmative manifestations of . . . intent and accorded great weight." Barasi at *2.

To show that Plaintiff did not meet the domicile requirement of 301(b), the ALJ pointed to the fact that Plaintiff's husband "did

Page 13 - OPINION AND ORDER

not own property and. . .did not even qualify to be a property owner in the [CNMI];" and that because Plaintiff lived in government housing between 1970 and 1979, Plaintiff did not have a "residence" that complied with the domicile requirement of § 1005 and § 301(b).[1] Tr. 20.

The ALJ also found that Plaintiff's intent was "less than convincing" because "there is no record of [Plaintiff] returning to the [CNMI from 1979-1986] except to appear at her [Certificate of Identity hearing] as required by law in 1984." Tr. 20.

The ALJ's analysis is overly narrow in context of Barasi's guidelines. Plaintiff registered to vote prior to January 1, 1975 in accordance with § 301(b). Tr. 135-36. Plaintiff's voter registration, therefore, should be afforded great weight and serve as an affirmative manifestation of her intent to domicile in the CNMI.

The lack of a physical residence is irrelevant under the third prong of Barasi's guidelines, as it does not negate Plaintiff's true intent to reside permanently in the CNMI.

Whether Plaintiff's husband held title to property in the CNMI is also irrelevant. Plaintiff and her husband believed in good faith that they owned property in the CNMI, and intended to live on that

---

[1] Upon the termination of the trusteeship agreement, property laws in the CNMI changed to comport with property laws in the United States. Tr. 100. Because Plaintiff's husband had not perfected title to his land in the CNMI, he no longer held an interest in the land. Id.

Page 14 - OPINION AND ORDER

land upon their return. E.g. Tr. 148, 173. This good faith belief, along with Plaintiff's voter registration, are ample manifestations of her intent to domicile in the CNMI. This intent is reflected throughout the record.

Plaintiff renounced her citizenship to the FSM in 1975. Tr. 130. Plaintiff testified that her sole reason for leaving the CNMI was related to her husband's employment. Tr. 125. Indeed, Plaintiff intended her stay outside the CNMI to be temporary, as she hoped her husband's training and subsequent employment would allow them to return to the CNMI. <u>Id</u>. This hope lasted until 1987, when Plaintiff's husband was terminated after his employer declared bankruptcy. Tr. 126. Therefore, the totality of the evidence shows that she intended to return to the CNMI at all times between 1979 and November 4, 1986.

Relying on the factors outlined above, I find that Plaintiff satisfies the requirements of § 301(b) based on the <u>Barasi</u> guidelines. My finding that Plaintiff is a citizen by way of § 301(b) is expressly limited to the sole purpose of determining Plaintiff's eligibility for SSI benefits.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this 19 day of June 2014.

*/s/ Ann Aiken*
Ann Aiken
United States District Judge