IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TOMIKO MARCUS,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

Case No. 6:13-cv-01009-AA
OPINION AND ORDER

Merrill Schneider
Schneider Kerr & Gibney Law Offices
P.O. Box 14490
Portland, Oregon 97293
    Attorney for plaintiff

S. Amanda Marshall
United States Attorney
Ronald K. Silver
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Gerald J. Hill
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff Tomiko Ernest Marcus seeks attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The Commissioner of Social Security ("Commissioner") opposes plaintiff's motion on the basis that its position was substantially justified. For the reasons set forth below, plaintiff's motion for attorney fees (doc. 17) is granted.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for supplemental security income ("SSI") on April 9, 2007. Tr. 25, 64. On March 13, 2009, after a hearing, Administrative Law Judge Marilyn Maurer ("the ALJ") issued a decision finding plaintiff was a U.S. citizen for the purpose of SSI and granted her benefits. Tr. 95-101. The Appeals Council then reviewed the decision on its own motion and remanded it for further development of the record. Tr. 91-92, 103-07, 153-56. On April 19, 2011, ALJ Maurer reversed herself and issued a decision finding plaintiff was not a U.S. citizen for the purpose of receiving benefits. Tr. 14-21.

Plaintiff then sought judicial review from this Court. Pl.'s Opening Br. 1 (doc. 12). She argued that she was a U.S. citizen on the grounds that (1) she had received a Commonwealth of the Northern Mariana Islands ("CNMI") Certificate of Identity card

Page 2 - OPINION AND ORDER

which entitled her to U.S. citizenship; (2) *res judicata* required a finding of U.S. citizenship; and (3) she met the domicile requirements for CNMI and U.S. citizenship. Id. at 8-9. In response, the Commissioner argued that plaintiff's identity card did not entitle her to citizenship, *res judicata* was inapplicable, and plaintiff was not domiciled in the CNMI for five years immediately prior to Nov. 3, 1986 and thus was not a CNMI or a U.S. citizen. Def.'s Br. 6-10 (doc. 13). On June 19, 2014, this Court held that plaintiff was a U.S. citizen for the purpose of receiving SSI benefits, finding that she was domiciled in the CNMI for five years immediately prior to Nov. 3, 1986 and met the other citizenship qualifications. Marcus v. Colvin, No. 6:13-CV-1009-AA, 2014 WL 2872234, at *7 (D. Or. June 19, 2014) (doc. 15). Subsequently, plaintiff moved for attorney's fees in the amount of $5,258.34. Pl.'s Mot. Att'y Fees (doc. 17, 19).

## STATEMENT OF FACTS

Plaintiff was born in 1940 on Moen Island, which now forms part of the Federated States of Micronesia ("the FSM"), an independent, sovereign nation in the South Pacific. Tr. 125, 129. In 1970, plaintiff and her husband moved to Saipan, another South Pacific island now part of the CNMI, a territory of the United States. Tr. 125, 127. At the time of plaintiff's move, both Moen and Saipan were part of the United Nations' Trust Territory of the Pacific Islands ("the TTPI"). Id.

Page 3 - OPINION AND ORDER

Plaintiff resided in Saipan from 1970 until 1979, during a time of transition for the Northern Mariana Islands. Tr. 125. Plaintiff raised children while her husband worked for the government of the Northern Mariana Islands. Id. Starting in 1972, Saipan and the other Northern Mariana Islands began negotiating to become a U.S. commonwealth. In 1975, the people of the future CNMI approved the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("the Covenant") and the U.S. Congress and President subsequently approved it. Pub. L. 94-241, 90 Stat. 263 (1976) (codified at 48 U.S.C. § 1801). The Covenant defined the CNMI's relationship with the United States and included provisions for awarding U.S. citizenship once the commonwealth was formally established. Id. at § 301. That would not occur until November 4, 1986. Proclamation No. 5564, §2(a), 51 Fed. Reg. 40,399 (Nov. 3, 1986)(reprinted in 48 U.S.C. § 1801).

In the interim, the future CNMI established a government, approved a constitution, and granted interim U.S. citizenship and Certificate of Identity cards to qualifying individuals. DeMesa v. Castro, 844 F.2d 642, 644-45 (9th Cir. 1988). In 1974, plaintiff registered and began voting in local elections in Saipan. Tr. 125, 136. In 1975, plaintiff renounced her FSM citizenship in order to pursue CNMI citizenship. Tr. 130.

In 1979, plaintiff moved to Oregon along with her husband,

Page 4 - OPINION AND ORDER

Mike Marcus, who was participating in a two-year work training program. Pl.'s Opening Br. 7; Tr. 125, 129, 148. She left behind children, including a mentally challenged and paraplegic daughter. Pl.'s Opening Br. 7; Tr. 125, 148. Plaintiff maintained that she and her husband intended to return to Saipan once her husband could secure employment there. Tr. 125-26. When her husband's work training program ended, he accepted employment in Oregon with Continental Airlines ("CAL") in the hopes he might eventually secure employment in Saipan with CAL subsidiary Air Micronesia. Tr. 125-26. While in Oregon, the Marcuses applied for CNMI Certificate of Identity cards. In 1984, plaintiff and her husband received the cards and, with the cards, interim U.S. citizenship. Tr. 125, 129-32, 143. The Marcuses believed they owned land in Saipan but would later learn that a 1986 change in law extinguished their property rights. Tr. 69, 148, 240.

By 1989, Mike Marcus had lost his job with CAL and the Marcuses began to believe that a return to Saipan was unlikely and sent for their disabled daughter to join them in Oregon. Tr. 125. In 2007, an administrative law judge granted Mike Marcus Medicaid benefits finding that he met domicile requirements for CNMI citizenship and thus was a U.S. citizen for the purpose of Medicaid. Tr. 88-90.[1]

---

[1] Mike Marcus also sought SSI benefits and obtained a favorable decision from this Court. Marcus v. Colvin, No. 6:13-CV-01011-AA (D. Or. June 19, 2014).

Page 5 - OPINION AND ORDER

## STANDARD OF REVIEW

In civil cases, the EAJA creates a presumption that parties that prevail against the United States are entitled to attorney fees "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412 (d)(1)(A); Flores v. Shalala, 49 F.3d 562, 567 (9th Cir. 1995). Here, neither party disputes that the plaintiff prevailed. As such, the Court must grant plaintiff reasonable attorney fees unless the Commissioner establishes (1) that its position was substantially justified or (2) the existence of special circumstances. Gutierrez v. Barnhart, 274 F.3d 1255, 1258 (9th Cir. 2001). Here, the Court does not find plaintiff's requested fee amount unreasonable. Moreover, the Commissioner raises no special circumstances that would make an award unjust or unreasonable. As such, the Court focuses on whether the Commissioner's position was substantially justified. Def.'s Resp. Pl.'s Mot. Att'y Fees 2.

## DISCUSSION

In order to demonstrate substantial justification, the Commissioner carries the burden of showing that its position had "a reasonable basis in both law and fact." Meier v. Colvin, 727 F.3d 867, 870 (9th Cir. 2013)(citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)); see Gutierrez, 274 F.3d at 1258. The government is substantially justified if its position meets "the traditional

Page 6 - OPINION AND ORDER

reasonableness standard" which requires that the position be justified "to a degree that could satisfy a reasonable person." Corbin v. Apfel, 149 F.3d 1051, 1052 (9th Cir. 1998) (citing Pierce, 487 U.S. at 565). In evaluating reasonableness, courts consider both "objective indicia" such as the case's procedural history and the views of other courts as well as the overall merit of the government's position on the dispositive issues. Pierce, 487 U.S. at 568-69; Gonzales v. Free Speech Coal., 408 F.3d 613, 618 (9th Cir. 2005).

Here, the dispositive issue was the proper interpretation and application of the citizenship criteria of Section 301(b) of the Covenant, specifically the domicile requirement. Marcus, 2014 WL 2872234, at *7. Section 301(b) and subsequent enactments granted CNMI and U.S. citizenship to individuals who, as of November 3, 1986, were citizens of the TTPI, were continuously domiciled in the Northern Mariana Islands for at least five years prior to that date, had registered to vote prior to 1975, and owed no allegiance to any foreign country. Id. at *2; § 301(b), 90 Stat. 263. The question before the Court was whether plaintiff met the five-year domicile requirement and thus qualified as a U.S. citizen for the purpose of receiving SSI benefits. The Court rejected the Commissioner's narrow interpretation of the domicile criterion to require plaintiff to own land with a physical building on it. See Def.'s Br. 7-8 ("the absence of a building on the land disqualified

Page 7 - OPINION AND ORDER

it as a residence, which in turn disqualified it as a domicile"). Instead, the Court examined the totality of plaintiff's conduct, finding that, during the relevant five-year time period, she believed in good faith that her family owned land in the CNMI and she intended to return. Marcus, 2014 WL 2872234, at *6. In rendering the decision, the Court cited Barasi v. United States drawing guidance from its approach to similar issues and facts. No. 88-004, decl. judg. at *2 (D. N. Mar. I. Aug. 3, 1988).

The Commissioner argues that its position, although unsuccessful, was substantially justified, because "Barasi is not precedential" and the Commissioner reasonably construed the statute to require maintenance of a physical residence in the Northern Mariana Islands. Def.'s Resp. Mot. Att'y Fees 3. District courts, however, routinely cite non-binding opinions for persuasive reasoning, and such citations do not foreclose an award of attorney fees. See e.g., Bailey ex rel. Pace v. Colvin, 3:12-CV-01092-BR, 2013 WL 6887158, *3 (D. Or. Dec. 31, 2013)(attorney fee award and underlying opinion based on non-binding district court opinions); Hodgson v. Astrue, 2012 WL 786352, *3 (D. Or. Feb. 16, 2012) report and recommendation adopted, 2012 WL 786943 (D. Or. Mar. 9, 2012)(granting attorney fees after relying on non-binding district court cases); Irwin v. Astrue, 2011 WL 2619503 (D. Or. July 1, 2011). Moreover, the mere fact that a dispositive issue was one of first impression in the Ninth Circuit is not enough to

substantially justify the government's position. <u>Gutierrez</u>, 274 F.3d at 1259-59. Rather, the Court must consider whether "the position of the government was, *as a whole*, substantially justified." <u>Id</u>. (emphasis in original). Here, objective indicia and an examination of the merits demonstrate that the Commissioner's position was, on the whole, unreasonable.

The Supreme Court noted that "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified . . . Nevertheless, a string of losses can be indicative; and even more so a string of successes." <u>Pierce</u>, 487 U.S. at 569. Here, a "string" of earlier administrative decisions applied this Court's broader interpretation of the domicile requirement. In 1984, the Northern Mariana Islands granted plaintiff and her husband Certificate of Identity cards and with them, interim U.S. citizenship. The requirements for obtaining the cards were substantially identical to the requirements for obtaining full citizenship under the Covenant. <u>DeMesa</u>, 844 F.2d at 644-45. The difference was that the relevant date for assessing domicile and other requirements was March 6, 1977, and not Nov. 3, 1986. <u>Id</u>. Although the Marcuses resided in the Northern Mariana Islands until 1979, they never owned property there but rather resided in government housing. In granting plaintiff interim citizenship and an ID card, the Northern Mariana Islands did not require plaintiff to own developed land on

Page 9 - OPINION AND ORDER

the islands in order to establish domicile.

In 2007, ALJ Jesse J. Pease's opinion granting Medicaid to Mike Marcus echoed the island government's interpretation of the Covenant's domicile requirement. Pease held that although the Marcuses resided in the United States during the crucial five-year period before Nov. 3, 1986, "so long as [Marcus] considered the Northern Mariana Islands as his home and intended on returning to the Northern Mariana Islands, he could be considered to be domiciled in the Northern Mariana Islands." Tr. 89. The ALJ here initially reached a similar conclusion regarding plaintiff Tomiko Marcus, holding that her reasonable belief that her husband owned property and her intent to return to the islands was sufficient to establish domicile. Tr. 100. Even upon remand, the ALJ based her decision not on a narrower interpretation of the domicile requirement, but on alleged gaps and discrepancies in the evidentiary record. Tr. 20-21. Thus, a total of four prior administrative decisions rejected the Commissioner's narrow interpretation of domicile.

Even without these objective indicia, the Commissioner's statutory interpretation was simply not reasonable. As a rule, courts must avoid statutory interpretations that would produce "absurd results." Helvering v. Hammel, 311 U.S. 504, 510-511 (1941); Hurlic v. S. California Gas Co., 539 F.3d 1024, 1032 (9th Cir. 2008). Here, the Commissioner's interpretation of the

Page 10 - OPINION AND ORDER

Covenant's domicile requirement would strip citizenship rights from overseas workers whose only true home is the CNMI but who lacked the resources or foresight to purchase a home there. Plaintiff was required to renounce her FSM citizenship in order to receive interim CNMI citizenship. She registered and voted in the CNMI and possessed a CNMI ID card. Moreover, ALJ Pease held plaintiff's husband, despite being born in the FSM and not owning a home in the CNMI, both a CNMI and U.S. citizen for the purpose of receiving Medicaid benefits. Yet, the Commissioner urged this Court to adopt a position that would have rendered plaintiff stateless, at least for the purpose of SSI benefits.[2] Moreover, the Commissioner essentially argued for different interpretations of the same statutory provision, Section 301, depending on whether an applicant with ties to the CNMI seeks SSI or Medicaid. Although the Medicaid decision does not legally bind this Court, the Commissioner provided no rational reason why the Court should complicate benefits jurisprudence with a different and more stringent standard for SSI benefits. As such, the Court finds the Commissioner's position lacked substantial justification.

---

[2] ALJ Maurer made note of this absurd outcome in her opinion when remand compelled her to reverse her grant of benefits. The ALJ wrote: "It is troubling that the decision of an administrative body could essentially strip an individual of all nationality . . . it seems this decision may leave [Mrs. Marcus] without a nationality." Tr. 21.

Page 11 - OPINION AND ORDER

## CONCLUSION

The Commissioner failed to show its position was substantially justified. Accordingly, plaintiff is entitled to attorney fees in the amount of $5,258.34. Plaintiff's EAJA application (doc. 17, 19) is GRANTED.

IT IS SO ORDERED.

Dated this 28th day of October 2014.

                    _____
                            Ann Aiken
                    United States District Judge